WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SUR-
ROGATE.—May, 1883.

## HILL v. NELSON.[*]

*In the matter of the judicial settlement of the account of*
THOMAS NELSON, *and others, as executors of, and*
*trustees under the will of* WILLIAM NELSON, *deceased.*

An executor and testamentary trustee cannot receive commissions upon
receipts and disbursements having only a constructive and not an actual
existence.

Accordingly, where testator, in his will, recited that he had made and
might continue to make advances to his children, etc., and had or
might become liable to pay certain sums for them, and directed the
amount of such payments, etc., to be deducted from their respective
shares of his estate,—

*Held,* that commissions must be computed upon the amount of the sev-
eral shares after making the deductions provided for in the will.

*It seems,* that the intention of the statute (2 *R. S.*, 93, § 58) relating to an
executor's commissions, and providing that the Surrogate shall allow
"to him *for his services,* and if there be more than one, shall apportion
among them, according to the services rendered by them respectively
. . . . *for receiving and paying out all sums of money,*" etc., is to
make the sums called commissions compensation, not for the service of
receiving and paying, but for the whole service measured by a fixed
standard.

Where a testator made a testamentary provision for the executors' com-
missions, in nearly the words of the statute, and on the accounting it
appeared that various moneys had been received and paid out, it was—

*Held,* that one executor who had rendered services, but had neither received
nor disbursed money, was, nevertheless, entitled to an appropriate share
of the percentage.

Testator, who left a personal estate of the value of more than $400,000, by
his will, nominated three executors and trustees, T., G. and H., and
fixed their commissions "at the rate of five per cent. on the first five
thousand dollars, and two per cent. on the residue, or all sums above
or beyond said five thousand dollars, for receiving and paying out the
same, such commissions to be charged but once by all of said executors

---

[*] See Arthur v. Nelson, *ante,* 337.

and trustees, and not by each, and to be apportioned among them according to the amount of services rendered by each." Upon the accounting, a contest arose as to the division of the commissions, amounting to over $10,000, H. claiming one third thereof, although he filed a statement in which he declared that he had neither received nor disbursed any moneys, but that his main services consisted in giving advice as to opening streets, laying out, placing and selling lots, and as to other matters, etc., etc.  The account was very voluminous, containing about ten thousand items of moneys received and paid out, and giving evidence of great labor, care and responsibility, extending over a period of ten years, in investing, reinvesting, applying income, etc., as directed in the will.  T. testified that one third of his time, during this period, was devoted to the work.  The time occupied by H., in his consultations, etc., had been small.—

*Held*, that $250 would be a liberal allowance to H., for his proportion.

There is no rule which deprives an executor of commissions, or diminishes the same, because of the labor or expense requisite to put his accounts into an intelligible form.

On a contest between co-executors over the division of their commissions, the stenographer's fees should be paid out of the commissions, as the question concerns the executors only; and each party's portion should bear its *pro rata* share.

ON the settlement of the decree in this matter, a question arose as to whether the executors were entitled to commissions on a sum amounting to about $80,000, which the beneficiaries under the will had received from the testator in his lifetime, or which he was liable to pay for them, and concerning which he provided in his will as follows:

" 14th.  As I have made very considerable advances to my children, and to the husbands of some of my daughters, and as I may continue to make such advances hereafter,—and have or may become liable or responsible for certain of my children or their husbands,—and as it is but just that all payments or advances thus made should be deducted out of their respective shares of my estate, or of the residue thereof, it is my will, and I do order and direct that all advances or payments to, for, or

on account, and all indebtedness of either of my seven living children who are to share in the residue of my estate, or to or on account of the husbands of such of them as are daughters, or to or on account of the children of my deceased son William Rufus, which have been heretofore or shall be hereafter charged by me in my own handwriting, or by either of them in any book of account or elsewhere, or which shall be evidenced by any bond, note, or other obligation, with such interest as may be charged and payable by such entry, memorandum, or obligation, and any and all sums of money which I may have been or be compelled to pay as surety for or on account of any of my said seven children, or the husbands of any of my daughters, or which my estate shall be in like manner compelled to pay, with the interest thereon, and all notes and obligations which I may hold at the time of my death against any of my said sons or my daughters or their husbands, be deducted and charged against the share of the residue of my estate given to or for the benefit of my said sons and daughters, respectively, by this my will, including my aforesaid granddaughters. For the purpose of determining the amount of the respective charges against my several children and grandchildren, the whole amount of the advances, debts, etc., against all of said children, including my sons-in-law and grandchildren, and interest on the same from the time of the several advances, payments of the advances, contraction of debts, etc., shall be regarded as part of my estate, and the amount and indebtedness, etc. (with interest on the same), to or against each child, including the husbands of such as are daughters, and grandchildren, shall be deducted from the

respective shares given herein for their benefit respectively; the shares given for the benefit of a daughter to be charged with her husband's indebtedness, etc., to me."

The executors claimed commissions on this sum, which claim was resisted by the contestants.

Another question arose as to the division of the commissions among the executors, of whom there were three, viz.: Thomas Nelson, George P. Nelson and Uriah Hill, Jr. The latter claimed one third of the commissions, which was very much more than the others were willing to allow, there being no question on the subject as between themselves. Thereupon, there being no sufficient *data* before it, to enable it to judge intelligently, the court proceeded to take such testimony as the parties produced, and which is summarized in the opinion. At an early stage in the proceeding, Mr. Hill filed a separate statement, in which he declared that he had neither received nor disbursed any of the funds of the estate; but that his main services consisted in giving advice and counsel in and about opening streets, laying out certain real estate into lots, placing the same in market, the sale of the same (as authorized by the will), in addition to the giving such advice and counsel as became necessary, from time to time, in the interest of the estate, and the rendering and performing of such other duties and services as, by law, devolved upon him.

By the will, the commissions were fixed "at the rate of five per cent. on the first five thousand dollars, and two per cent. on the residue, or all sums above or beyond said five thousand dollars, for receiving and paying out the same, such commissions to be charged but once by all of said executors and trustees, and not by

each, and to be apportioned among them according to the amount of services rendered by each; and their necessary legal expenses to be allowed in addition."

THOMAS NELSON, *in person, and for G. P. Nelson.*

STEPHEN LENT, *for Mrs. Ferris and other legatees.*

C. FROST, *for Uriah Hill, Jr.*

THE SURROGATE.—The claim of the executors for commissions on the $80,000 in question cannot be sustained. They neither, in fact, received that sum of money, nor paid it out. It was a mere matter of figuring that devolved upon them. What happened was a computation of balances, and the process was one of account, rather than the receipt and payment of money. To allow commissions upon this class of items would be to give them upon receipts and disbursements having only a constructive and not an actual existence (Attorney-General v. North Am. Life Ins. Co., *89 N. Y., 94–105*).

As to the question of the proper division of the commissions among the executors, it may be remarked that the direction contained in the will, in that respect, follows almost the exact language of the statute on the subject. That statute provides that: "on the settlement of an account of an executor or administrator, the Surrogate shall allow to him for his services, and if there be more than one, shall apportion among them, according to the services rendered by them respectively, over and above his or their expenses: for receiving and paying out all sums of money," etc.

Can this court award commissions, therefore, to an ex-

ecutor or administrator for services unless he has received and paid out moneys of the estate?

Suppose a case where the will contains nothing but specific bequests of assets other than money, and suppose such bequests amount, in value, to ten thousand dollars, and that the executor, in the discharge of his duties, encounters various litigations to obtain possession of the property bequeathed, in order that he may fulfil his duty by delivering it to the legatees, as he can have no commissions on such assets so specifically bequeathed, because they are not money received and paid out (Schenck v. Dart, *22 N. Y., 420*), yet he could get no compensation for his mere services, however meritorious and beneficial to the estate. Again, suppose a case where the whole and sole subject of the will is $100,000, in bank, which the executor is directed to divide and pay equally to three legatees. For performing that simple duty, he would be entitled to $1,000, and upwards. In the one case, no compensation is received for great services rendered, and, in the other, a large one for very small services. But as it was impossible to fix rules adequate to the exigencies of every conceivable case, some general one was established, that should be approximately just on the whole. So, in reference to the division of the commissions among several executors, I think the intention of the statute was to make the sums called commissions compensation, not for the service of receiving and paying, but for the whole service measured by a fixed standard (Collier v. Munn, *41 N. Y., 143*). Hence, where there are two executors, one of whom has rendered services only in receiving and paying out $50,000, and the other has rendered equal services in some other

way, in the discharge of his proper duties, without hav-
ing received or paid any of the fund, each would be en-
titled to one half of the commissions "according to the
services rendered by them respectively." Thus, the com-
pensation is not only for receiving and paying money, but
for all services rendered by any or all of several execu-
tors, according to the services rendered by each. Having
reached this conclusion, the next question is, what pro-
portion of the commissions, assuming them to amount
in the aggregate to $10,000 or $12,000, should be allotted
to Mr. Hill; there being no question presented as between
the other executors; so that I shall assume the division
between them to be made equal, or otherwise, as they
may arrange.

Here is a very voluminous account, containing, I should
estimate, in the neighborhood of eight to ten thousand
items of moneys received and paid out by the executors
other than Mr. Hill, who admits that he neither received
nor paid out any. The thought, the care, the labor and
responsibility of all this work, relating to an estate of over
$400,000 of personal property, extending through a period
of ten years, invested in various securities, and reinvest-
ed again and again, scattered over a great extent of
country, and applying the income to the purposes directed
by the will, and this income, with other items, swelling
the whole amount to nearly one million,—must necessarily
have been very great, and consumed much time. Thomas
Nelson testifies that one third of his time, for a period of
ten years, was devoted to this work.

Mr. Hill, on several occasions, had brief consultations
with the other executors, aided in laying out streets, in
the sale of a few village lots situated in the vicinity of

his residence, some of which sales were due to his agency, and was occasionally consulted by one or the other of his colleagues, and on one occasion, when he went to the West in search of health, took occasion to look at some property there on which the executors held mortgages, and at some property in Milwaukee in which the estate was interested. In all of these acts of his, relating to the laying out of streets, and the sales of the village lots, the other executors took, more or less, a part, and as to the western trip no apparent cause for an examination in relation to investments there is shown, and no appreciable results followed, and on account of which he makes no charge for expenses; nor, indeed, has he presented, in this proceeding, a single item of expenditure for allowance. It is quite apparent that the services of Mr. Hill, as compared with the vast labors of the other executors, are very small. In my judgment, they will scarcely bear the proportion of one to fifty—nay, of one to a hundred. If the fragments of time spent by him about the affairs of the estate, aside from the western trip, were susceptible of condensation, I think they would all be contained within the limits of one week, and it is not claimed that the services rendered were of any remarkable or immense value.

It was sought to be shown that Thomas Nelson had kept his accounts in so irregular a form that it cost much labor and expense to reach a result, and it seemed to be claimed that the amount of his commissions should, therefore, be diminished. It is not claimed that he had not charged himself with all he had received, or had credited himself with what he had not paid. I know of no rule which would deprive an executor of commissions

because of the labor or expense requisite to put his accounts into an intelligible form.

On the whole, I allow to Mr. Hill $250 of the commissions, deeming that a liberal allowance for his services, when contrasted with the services rendered by his colleagues.

It is a little remarkable that this is the first case, during my official life of upwards of twelve years, in which the testimony of witnesses has been taken, in reference to the division of commissions among co-executors. Such questions have arisen frequently, but upon suggestion made, the parties have uniformly agreed upon an adjustment, and I regret that it could not have been done in this instance.

The stenographer's fees should be paid out of the commissions, Mr. Hill's portion bearing its *pro rata* share. The controversy about the division of them concerns the executors only.    Other than that, I do not regard it as a case for the allowance of costs.

Decreed accordingly.